CHARLES W. COOK et al., complainants,

*v.*

CLARA E. OSBORN et al., defendants.

[Decided November 24th, 1924.]

Deeds—Bill to Have Deed Declared Mortgage—To Enable the Court to so Decree the Evidence Must Be Clear and Convincing, Not Mere Preponderance—Facts in Instant Case Not Convincing—If They Had Been, Complainants Were Barred by Laches.

On final hearing.

*Mr. Aaron V. Dawes* and *Mr. R. Ten Broeck Stout,* for the complainants.

*Mr. Maja L. Berry* and *Mr. David A. Veeder,* for the defendants.

BUCHANAN, V. C.

Complainants, as heir-at-law of David Cook, deceased, seek to have a certain deed from him to Lucinda Van Note declared to be a mortgage only, and to redeem the lands comprised therein. An accounting is also asked as to the income and proceeds of sale of timber from the premises while in the alleged mortgagee's possession.

The deed in question was dated and acknowledged September 18th, 1897, and recorded October 20th, 1897. It

recites a consideration of $184.14, and conveys all the estate of the grantor in all the lands devised to him by Charles Van Note. It specifically describes three tracts, and, by added words, all the other lands to which he might be entitled under the will of Charles Van Note.

David Cook and the defendant Clara (Pullen) Osborn were adopted children of Charles Van Note and Lucinda Van Note; Charles Van Note had died some ten years previously, devising his real estate to his widow for life, remainder to the two adopted children in equal shares. At the time of the deed David Cook therefore had an undivided one-half interest in remainder in the lands, subject to his adopted mother's life tenancy. His interest was also defeasible (under the will) if he died without leaving issue, but such defeasance was improbable, as he had four children living.

The value of the devised real estate was the subject of considerable testimony. Defendants practically admit, however, and one or two of defendants' witnesses admit, that David Cook's interest was worth far in excess of $181 at the time of the deed. Defendants in their argument take the position that the value of the lands in which David Cook had this defeasible half interest in remainder was $6,500 in 1897. His one-half interest, if not defeasible, and if, then, presently enjoyable by him, would have been $3,250. Even if the life tenant had an expectancy of life of twenty years more, and also allowing further discount for the possibility of defeasance of David Cook's interest, it would seem clear that $181 was a grossly inadequate consideration.

That $181.14 was the actual consideration is, of course, presumptively true, from the statement in the deed, and from the further fact that this figure in the deed was originally 179.14, and was changed to $181.14. The deed is in the handwriting of Judge Carmichael, admittedly a careful practitioner, now dead

One hundred and seventy-nine dollars and fourteen cents was the sum due at that time on an execution out of the Ocean common pleas on a judgment held by

Merrick Burdge against David Cook. Levy had been made and sale was about to take place. Mr. Van Note paid $181.14 to the sheriff on September 18th, 1897 (the date of the deed), and took an assignment of the judgment, which assignment by Burdge to her was dated September 22d, 1897, and recorded October 20th, 1897 (the same date as the recording of the deed). The judgment was never satisfied of record; the execution was never returned into court.

David Cook died in 1899. Mrs. Van Note died in 1913. By her will she gave to Clara Pullen her residuary estate (in which was included the one-half interest acquired from David Cook), and also the judgment above mentioned, specifically describing it.

Neither Mrs. Van Note or Clara Pullen ever sought to collect this judgment.

The foregoing covers substantially what may be called the undisputed and indisputable evidence. A consideration thereof makes it obvious that there is a strong possibility that the deed was intended by the parties, not as an absolute conveyance, but as a mortgage security for the loan of $181.14.

Where the evidence shows that a deed, absolute on its face, was intended by the parties only as a mortgage, this court will so decree, and establish the instrument as a mortgage. But, to lead the court to such a result, the evidence must be clear and convincing. A mere preponderance on the balancing of testimony or other evidence is not enough. The effect of the written instrument entered into by both parties is not lightly to be disregarded. The mind of the court must be satisfied that the real intent and agreement of the parties was that a security was being given for a continuing debt, instead of a conveyance. *Cake* v. *Shull*, 45 N. J. Eq. 208 (at p. 212); *Clinton Hill Lumber Co.* v. *Strieby*, 52 N. J. Eq. 576 (at p. 579); *Wilson* v. *Wilson Hotel Co.*, 94 N. J. Eq. 212 (at p. 214); Cf. also. *Traska* v. *Piekielko*, 2 N. J. Adv. R. 711 (at p. 712); affirmed, 2 N. J. Adv. R.

*1507*, and *Federal, &c., Assn.* v. *Eastern Land Co.*, 2 *N. J. Adv. R. 1522* (at *p. 1525*).

The evidence so far considered falls short of the degree of proof which is requisite. Improbable as it would seem for David Cook to have sold and conveyed his interest for $181, it is, nevertheless, not impossible, nor is it so improbable as necessarily to lead one to the conclusion that he did not do so, in the face of his solemn deed stating that he did. Admittedly, he was a man of maturity and intelligence. There was no fiduciary relationship between Mrs. Van Note and himself either in fact or in law.

Moreover, other things being equal, it is as reasonable to believe that a deed does not recite the true consideration as that it does not express the true intent of the parties. The evidence hereinbefore mentioned would tend to support the belief that the true consideration was expressed; but there is other evidence in the case tending to show that additional consideration did pass, testimony that cannot be arbitrarily and absolutely disregarded even though some of it comes from an interested party, the principal defendant. The testimony of this defendant also tends to prove that David Cook intended the instrument as a deed of conveyance.

There is also testimony that both David Cook, himself, and the neighborhood generally, believed that he could not make a valid conveyance of his interest. Such a belief would, naturally, result in depreciating the value of that interest in Cook's own mind, and the market value or price that could be obtained at an execution sale.

Evidence that would ordinarily be available in a case of this kind, as to possession and payment of taxes, is eliminated, because the life tenant was in possession as such and correspondingly bound to pay taxes and upkeep.

The taking of the assignment of the judgment, and failure to satisfy it of record, is susceptible of explanation by the possibility that Mrs. Van Note (or her legal adviser) intended thereby to protect against the contingency of other liens or encumbrances antedating the deed, of which they were not aware, but which might, perhaps, exist. The same

theory would explain the bequest of the judgment in the will accompanying the devise of the lands.

Inadequacy of a consideration alone is, of course, not adequate proof that a deed was intended as a mortgage. Nor is it sufficient to warrant rescission or setting aside of a conveyance unless the inadequacy is so great as to be itself evidence of fraud.

Charles Cook, one of the complainants, testifies that he went to Mrs. Van Note to remonstrate with her about her having sold the timber off from a part of the lands, and that she said she had a right to sell it because it was perishable property—had been partly burned already. Even taking this testimony at its full face value it is in nowise conclusively an admission by Mrs. Van Note that she did not own the David Cook interest therein. Clara Pullen still owned her half interest in remainder, and Mrs. Van Note's reply may have been with that in mind. It is testified that before Charles Cook went to see Mrs. Van Note he went to see Clara Pullen to try to get her to remonstrate with Mrs. Van Note, and he may have spoken of Clara Pullen's interest in his protest to Mrs. Van Note.

A witness, Fisher, testifies that he heard Mrs. Van Note say she had loaned David Cook "money enough to pay Aunt Monty Grant's funeral expenses" (for which the Burdge judgment was recovered). Reliance cannot be placed on this, especially after all these years, and it is not conclusive even at its face value; she may have meant that she had previously loaned him enough money to pay the funeral expenses, but that he hadn't paid them. She may not have used the word "loan" at all; another witness testifies she said, "I let him have the money, &c." "I let him have the money" would not be inapt to express the conveyance transaction—for it appears that David Cook went to her to get it. It does not appear that she ever desired to purchase his half interest in remainder, or that there was any reason why she should.

There is other testimony which need not be referred to in detail. The net result of the entire evidence is, to my mind,

that it affords ground for suspicion, even strong suspicion, that the parties may have intended this deed only as a mortgage, but that it falls short of satisfying the mind that that in fact was what they intended.

Even if I had reached the opposite conclusion on this point, I am inclined to think that complainants would be barred by laches. From Charles Cook's own testimony he complained to Mrs. Van Note about her sale of the timber about 1900, evidently on the theory that he, as an heir of David Cook, had some rights in the land. That was about the time he attained his majority. His sister, Mrs. Brower, was then over age. They could have brought suit on behalf of themselves and their two sisters twenty years ago. They could have done it ten years ago, after Mrs. Van Note's death, for, assuredly, then they knew that she claimed to own David Cook's interest, and all four children were then of age. Shortly thereafter they, or some of them, consulted counsel about the matter. They waited for eight years thereafter, although sixteen years had then already elapsed since the transaction they now seek to question. The intervening deaths and failures of memory (so evident in the testimony of some of the witnesses), the loss of evidence (such as the burned note), and the like, all make what seems to me a clear case of laches.

Counsel for complainants apparently misapprehend the application of the doctrine of laches to the case at bar, in contending that delay less than twenty years cannot bar a mortgagor's bill for redemption. Complainants' bill is not primarily a mortgagor's bill for redemption; it is a bill to decree an instrument, in form a deed, to be a mortgage, and unless and until that is done they are not mortgagors seeking redemption. Clearly, it does not take twenty years' delay to constitute laches which will defeat a bill of that kind.

The bill must be dismissed.